years at the same time I was Chief Judge so we had the opportunity to work together a great deal at that time. She's highly respected, highly experienced, has been chosen by the Chief Justice of the United States to serve on at least two very distinguished committees that I'm familiar with and we always on this court benefit greatly when we get experienced district judges to sit with us and we're very pleased and appreciative of Anne. I call the first case which is the Georgia Department of Education v. United States Department of Education. Thank you, Your Honor, and may it please the Court. Andrew Pinson for the petitioner, the Georgia Department of Education. This court should vacate the Secretary's decision below for two main reasons. First, the Secretary exceeded her statutory authority by barring Georgia from seeking an equitable offset of a $2 million refund demand based on a novel unclean hands theory that is precluded by the statutory language. Second, the Secretary's decision was arbitrary and capricious because using a grantee's culpability to bar equitable offset departs from an unbroken line of 25 years of agency precedent and the Department failed to acknowledge, much less explain, that departure in its decision. Because the ALDA and the Secretary both failed to apply the proper determination of equitable offset and indeed failed to make any factual findings with respect to the offsetting claims, we think the proper course here is to vacate the Secretary's decision and remand to apply the correct test for equitable offset. But as I read the statute, it is, there is a mandatory duty to do some offset when there are mitigating circumstances, but the statute describes that very narrowly as when to indicate that when the recipient had actually and reasonably relied on erroneous written guidance from the Department of Education or sought guidance from the Department and the Department just never got back to them. That would be a mandatory circumstance. There's nothing like that here, is there? So the mitigating circumstances provision, you're right Judge Carnes, is a narrow circumstance about reasonable reliance, but the equitable offset concept is not situated in that provision. It's actually part of the initial determination of the harm to the identifiable federal interest. And it's actually a necessary part of that initial and statutory determination. The harm to the federal interest by the violation is one piece, but the second piece is that if the state can show that in fact part of that harm is mitigated by actually other expenditures that further the exact same purposes of the same grant, the harm is actually less than what the violation itself otherwise seemed to show. So we do think it is in fact a part of that statute and it's a part of that initial determination, not the mitigating circumstances piece of it. When you say the Secretary failed to make factual findings, you're talking about with respect to the funds sought to be offset, right? Because the Secretary did make factual findings with respect to the misconduct. That's right, Judge Carnes. Under the proper analysis of equitable offset, that focus is on those offsetting expenditures and there were no factual findings made there because the Secretary instead disqualified Georgia from using equitable offset before it ever got to that proper determination. And so again, starting with the statutory argument, I think it is important to reiterate that this is a, although it's called equitable offset, it's a doctrine that is in fact part of this initial determination of the harm. That's shown just by the logic of the situation where you have a harm to the federal interest, but a harm that's not in fact as great as it could have been because the state has in fact spent its own funds to offset that harm. Not to offset the harm, but in fact to further the federal interest, the same federal interest that are at issue in the grant. Would you agree that as an equitable offset, there is some discretion in applying it? There is, so equitable offset, there is discretion in applying it, but not I think in the way that the Secretary is doing it here. I should note that equitable offset as the agency has applied it for 25 years is not simply carting in the equitable doctrine of set off wholesale or doing equity as a whole. It's a very specific doctrine keyed specifically to these particular determinations of refund amounts. It does not say you can bring any claim that the state has against the federal government and we'll deal with it all together. It's a specific claim that when funds have been disallowed under a particular grant program, you can look at whether the state has expended its own funds to further the same purposes of that same grant program. So it's a narrow doctrine and not necessarily the same equitable one that brings in sort of the rest of equity with it. And so to the extent that there's discretion in applying it, it's discretion that goes to looking at those claims for equitable offset and saying, is this actually tied to the purpose of this same grant? So what amount of money do you think would have been the, you think you should have gotten a free ride on the entire, well actually it was $5 million that was misspent, but based on the improper bidding process, but because of the statute of limitations, you were only going to be required to pay $2.1 million. Are you saying you get a free ride on the whole $2.1 million because somewhere else in your budget you spent $2.1 million? Well, so Judge Perkins, I wouldn't consider it a free ride because both of these considerations that reduce the amount that we would be required to pay are part of the statutory scheme. So the statute of limitations is in the statute and that's, that $3 million is past the statute of limitations that was stipulated. So certainly that's, it's not a free ride. What about, are you saying you don't have to pay anything? You don't have, you're totally, it's a wash. You don't have to refund any of the $2.1 million? So the state has put forth claims for equitable offset that we have tallied up to $3.9 million, which would offset the $2 million. The agency has made no factual findings with respect to that offset. So the question whether we pay nothing in the end is really a question for remand. Will your position be on remand? Zero will be your number? Our position on remand would be zero, but we can't say here right now. All that's been done with respect to the offsetting funds is the state has presented evidence and the department has made some arguments against it, but there hasn't been a factual determination. There haven't been evidentiary hearings. There hasn't been a determination whether all of those funds actually meet the purpose of the grant in question. So it may be in the end that the amount that the state pays back is less than that. But that brings me back to the main point, which is that to the extent that the state is able to offset and the amount comes to zero, that's only because the statute permits it. The statute does not permit the department to get back its entire refund amount based on just any violation. That was the old statute. Before the 1988 amendments, the department was permitted however slight a variation from grant conditions to ask for and get the entire refund amount. That's what the Supreme Court said and that's what this court said in the Fort Valley State decision. But with the 1988 amendments, Congress changed that. Congress specifically says now the department can only get an amount that is proportionate to the extent of the harm to an identifiable federal interest. An equitable offset provides that the harm to that federal interest is actually less than what the violation itself otherwise would have caused because the state actually has provided to the department at least some portion of what the department asked for when it provided the grant funds. Well, there are several identifiable federal interests and two that are listed are complying with expenditure requirements and preserving the integrity of the application requirements. Those interests were totally undermined by the improper process that was used. Would it not be within the discretion of the secretary to decide that the only way we can stop this in the future is to be pretty strict about the refund? Otherwise, states could go through, do this every time. When they get caught, they say, well, by the way, look at this entry in the budget. You know, we spent some more money. There'd be very little disincentive for a state to be lax as happened in this case. Is that not so? So, Judge Carnes, I think a couple points there. The secretary certainly has discretion under the statute to make an initial determination of the amount that it believes the violations harmed the federal interests. The department then actually provides the state through its regulations an opportunity to dispute that and say, you know, under proportionality or other pieces that that interest is lower. The other point is that this is not a statute that is meant to punish. There is no indication in the statute that the secretary can make a determination that particular circumstances were particularly egregious. And so, whatever the offset, the state can't take advantage of it. It was pretty egregious, wasn't it? The fraud here was pretty egregious. So, I take issue with the characterization of it as egregious, particularly compared to some of the other cases that the department has dealt with. It's three former employees of 1,400, one out of 70 grant programs. And yes, there were some intentional manipulation of this grant program. But the program actually, even those grant funds, putting aside the, I think, 200,000 or so in expenditures that the department disallowed for other reasons, those expenditures still went to the same kinds of programs that were otherwise sought after in the grant. So, I don't think that it. So, you're saying the conduct of these employees. The individual's conduct. These employees who were fired, their conduct was egregious. But overall, the state, every now and then you have some bad apples. The state's conduct was not egregious. Their conduct was certainly, I think, we've conceded intentional. And you're not challenging the factual findings of the secretary with respect to what we're calling the misconduct, right? The underlying misconduct. No. Our point is that the underlying misconduct and the fact that it was intentional, right? Whatever language about culpability that you want to put on that conduct cannot increase the amount of harm under the statute that is key to the amount of the refund determination. Nothing in the statute, not in the identifiable federal interests or elsewhere, is there any indication that the secretary has discretion to say, we're going to keep this harm at this level and not let you bring in evidence that the harm was lower based simply on culpability or the intentionality of the actors involved? With respect to the precedent, as I understand your argument, your argument is based on what the secretary has always done. Meaning, considering where the funds went and whether they benefited the government program. Our second argument certainly is based on the fact that the secretary has always done it in this particular way. Is there any precedent that specifically says that the secretary cannot consider the misconduct with respect to the equitable offset? There is no direct precedent that says that. What the precedent says is in, I believe it's eight administrative decisions all talking about equitable offset over the 25 years until you get to the Pennsylvania decision. Every single one of them says equitable offset is not a matter of right, but it is considered and we will give it if these two conditions are met, right? That it's a expenditure of non-federal funds or at least not the federal funds that are part of the grant and if the expenditure furthers the same purposes as the grant. There has never been any consideration, even in cases where you have significant fraud like the Arizona case, that that actually factors into the equitable offset determination. Well, in the Arizona case, the parties agreed there should be an equitable offset and the only question was the amount, right? That's right. Although Pennsylvania's characterization of Arizona is totally unsupported in terms of the court looking to those as a factor. But that's right. I see my time is up. I'll save the rest for rebuttal. Thank you. Good morning, your honors. I'm Louis Yellen. I'm here from the Department of Justice here today on behalf of the United States Department of Education. Your honors, the Georgia Department of Education conflates two very different standards. A statutory standard for determining a measure of repayment based on the harm to the federal interest and a separate administrative standard for determining equitable offset. Now, in explaining the distinction between those two standards, I think it would be helpful  to understand the harm to the federal interest in this case. The United States has a right and an obligation to control the manner in which federal grant money is spent. In this case, there is no dispute that because of the fraud of employees of the state of Georgia, Georgia expended $5.7 million on subgrantees that were not qualified to receive the funding. In the peer review process, 16 of the organizations scored lower than other organizations and a 17th received additional funding that it was not entitled to. Now, the secretary found that that mis-expenditure of funding frustrated a key objective of the grant program. The objective being providing supplemental education enrichment for students at low-performing schools. I think it's helpful to understand why the secretary made that finding when we consider the nature of the grant program. Subgrantees identified different activities for different locations for different sets of beneficiaries. So in this case, the state of Georgia awarded subgrants to grantees that provided unauthorized services at unauthorized locations to unauthorized beneficiaries. Now, that's one. They provided them to students who weren't in underperforming schools that would not have been entitled to the particular services. So there is a dispute. The department, the United States Department of Education does not believe that the funds that were relevant here. I'm sorry, let me take one step back and answer more directly. There may have been students who were at underperforming schools, but the question is whether or not the subgrantees identified activities which were properly part of, would further the grant program. Just as a general matter, providing any sort of enrichment to any sort of student at an underperforming school doesn't satisfy the requirements of the grant program. That's exactly why there was this period. For example, give me an example, your worst example of a service they performed that should not have been performed. I'm sorry, Your Honor. I don't have specific examples in mind. What I can refer, Your Honor, to is the discussion of the peer review process and the fact that these were 16 organizations that scored much lower and so were not qualified in comparison to the organizations that scored much higher by the independent peer review process. Now, it was because funds were not expended pursuant to the grant requirements that the Secretary determined that the funding here, the expenditure here, undermined the integrity of the application process and undermined the accountability for the use of funds. Those are statutorily enumerated federal interests. Your adversary argues, though, that there were no findings of fact. So is it your position if you don't check the box and there's something wrong but we don't even know what it was that was wrong or the Secretary hasn't evaluated? Sometimes you can make a little mistake. Sometimes you can make a big mistake. And their position is there should have been some finding of fact by the Secretary before this is a pretty walloping, there's no offset here and it's a lot of money. What's your answer to that argument? So Judge Pryor, excuse me, Your Honor. Go ahead. Judge Pryor, I understand. Karnes. I beg your pardon, Judge Karnes. That's okay. You get mixed up all the time. But one shouldn't, so I apologize. I understand the state's argument to be narrower than what you just described. The state argues that the Secretary made no finding as to offset. The Secretary made plenty of findings as to the inappropriate expenditure of funding through subgrantees that were not qualified to. In other words, you can't think of the examples right now, but you're saying if we go through the record, the Secretary will have discussed at length some of the props, some of the problems. No, I'm sorry, Your Honor. I think the Secretary didn't say this program was inappropriate because. What the Secretary did was make a finding that is amply supported by the record and not disputed by the state that the 16 grantees that were awarded funding were not qualified to receive the funding. So with respect, Your Honor, there was no need to go on further and examine each program, program by program, because there is no dispute in this case  and so made unqualified expenditures. Now, what the state does argue is that the Secretary made no finding as to whether or not the monies the state has identified qualified as an equitable offset. That is correct, Your Honor. That is correct, but it's also beside the point. And here's where the distinction between the statutory standard for determining the measure of harm and the administrative standard for determining equitable offset becomes critically important. Through a long line of decisions, which were summarized in the Pennsylvania case, which is in an addendum to our brief, the Secretary has identified the equitable offset doctrine as a non-statutory remedy, an administrative remedy that the Department applies after it makes a determination of the measure, the statutory measure of damages. And it undertakes an analysis considering a number of factors. Now, one threshold requirement for any equitable offset is that the state identify funds that it spent that would be pursuant to the purposes of the federal program at issue. That is a... Thanks. So you're saying in that calculation process, implicitly, the Secretary decided that the damage here was the entire amount, 2.1 million. And then the next... That decision has been made based on the improper grantees, et cetera. Now it was up to the state to persuade on the equitable offset. That's precisely right, Your Honor. And the state's objection here is that the Secretary did not make findings as to whether the funds the state identified offset the mis-expenditure of fund. And that is correct. The Secretary did not make that finding. And the reason is because the Secretary determined that the state was not entitled to an equitable offset in light of other considerations. Now, I'd like to repeat because it's important. In any consideration of equitable offset, a state must establish that the monies it has identified further the purpose of the federal program. So that is a necessary but not sufficient condition for receiving an equitable offset. The Secretary's administrative decisions show that there are other equitable considerations, including the nature and the scope of the violation, which go into a determination of whether or not equitable offset is appropriate. Now, in the filings before the Secretary, the state acknowledged that the Secretary's interpretation of the department's own administrative adjudications is entitled to deference. That's in our supplemental appendix at page four. The Secretary has interpreted the equitable offset doctrine, which is an administrative doctrine, as containing a number of these equitable considerations, including, as I said, the nature and the scope. And there has been no case, zero cases, in which the Secretary has afforded an equitable offset where the scope and nature of the violation were as egregious as here. In the Arizona case, in which the Georgia Department of Education heavily relies, the violation involved $214,000 over three years. The violation here involved $5.7 million in one fiscal year. But in the Arizona case, the scope or the nature of the misconduct was not considered with respect to the equitable offset. Am I right about that? I think that's not entirely right, Your Honor. The department supported equitable offset. But if you look in the Pennsylvania decision, which described the Arizona decision, or if you, opposing counsel. As I read the Pennsylvania decision, it misconstrued Arizona. I don't. As turning on the misconduct when, in reality, the parties agreed that there should be an equitable offset. And the question was, how much was properly expended? No, I think that's exactly right, Your Honor. I guess I would resist the characterization of Pennsylvania as misdescribing. I think what Pennsylvania did was explain that there was intentional misconduct. That is, the employees in Arizona intentionally misused travel funds for improper purposes, but other considerations. Again, the equitable offset doctrine is a fact-intensive determination, which considers numerous factors. Other considerations, including the fact that, in that case, Arizona promptly acknowledged fault, disciplined or fired the employees, and immediately repaid the amounts at issue were sufficiently strong on the other side of the balance. And, as Your Honor alluded to, the U.S. Department of Education supported offset. All of those were factors supporting the application of an equitable offset. But Arizona does note in its analysis that the violations were intentional. That was a consideration here. And I would say, Your Honor— To answer this question, do you agree with your opponent that, before Pennsylvania, there was no case in which the misconduct was expressly considered as a reason not to allow the offset? As to not allow the offset? I think that's a fair characterization, Your Honor. I also think, however, in an equitable— with any sort of equitable doctrine which applies principles to the facts of the case, there will be new facts that arise. And the Department of Education, the United States Department of Education, had never seen a violation as egregious as this particular one. Again, $5.7 million in one fiscal year, and fraud which required a criminal referral as to one of the employees. Now, I appreciate that Georgia says this was only three employees out of a large program, but I'm sorry, it's just simply not credible to say that the conduct of the state's employees is not attributable to the state. It's also a quite passing odd suggestion that an equitable doctrine can't consider the fraudulent nature of the conduct of the state employees in determining whether or not equity would support an offset of the statutory harm. I'd like, Your Honors, to— Was part of the calculation that Georgia didn't have enough oversight, the state, into this kind of thing? Or I gather that you all had thought that they were pretty lax before they took corrective action after the fraud was discovered. Or their corrective action was too little too late, because at the time corrective action was taken, the full $5.7 million had been expended. I'd like, if I may, Your Honors, to further address the arbitrary and capricious notion that we were discussing before. I think it's perfectly fine if the Court deems it appropriate to address the merits of that question. We do, however, think that Georgia has waived that argument because it did not press the nature of the misconduct, of the mis-expenditure before the Secretary. Georgia quotes in its reply brief significant portions of the administrative record, mixing some of its own filings with some of the discussion of the chief administrative law judge in this case. But in no case will you find any statement from Georgia saying that as an equitable matter, the Secretary may not consider the scope and the nature of the violation in determining that equitable offset is not appropriate. Now, the reason I believe that the state of Georgia does that is because, again, it's conflating the statutory standard and the administrative standard. Georgia says in its reply brief, well, we argued all the time the Secretary could not take, you know, had to provide us an offset as a statutory matter. But this assumes, this argument that we're now making assumes as a given that this is an administrative doctrine, as the Secretary has described it repeatedly in a uniform line of cases since 19, the late 1980s, not a statutory matter. And again, that's a determination, an agency determination that's entitled to this Court's substantial deference, the Secretary's characterization of the own agency practice. And Georgia makes... You say as the overriding standard, we should apply to the Secretary's decision to determine whether it's appropriate. What, how would you describe the standard we use? I believe that interpreting, in interpreting the statute, the Court should apply Chevron deference to the extent that there is an ambiguity, to the extent that the statute is... I'm talking about bottom line. The Secretary decided to give no set off at all. Tell me... Oh, I believe that is an arbitrary and capricious standard, Your Honor. Yes, Your Honor. And again, Your Honor, the Department, U.S. Department of Education had not seen a mis-expenditure of funds as significant as in this case. And to the extent that... Does that help to state a little that you all were reacting strongly to a dollar amount and not so particularly to the factors you're supposed to consider? That is a factor. With respect, Your Honor, we're supposed to consider the scope and the nature are factors that the Secretary has identified from the earliest days of this doctrine. The scope here was off the charts. The nature here was uncontested fraud. And so I really would like to emphasize that the criteria that the Secretary applied are criteria that you will find in these administrative adjudications going back. And in any event, the Secretary's interpretation of the Department's own adjudications is entitled to substantial deference. Thank you very much, Your Honors. Mr. Pinsley. Thank you, Your Honor. Two or three points. First, Georgia has certainly exhausted or preserved these issues below. So, first of all, throughout the briefs before the ALJ, Georgia presented the argument that the Secretary is not permitted to add these new factors to its inquiry with respect to equitable offset. Even before the Secretary, Georgia described equitable offset as traditionally always having been a two-part test and then noted the new factors in Pennsylvania. But in considering what Georgia did below, you have to consider that throughout this litigation, Georgia was essentially at the whims of the agency's various changing positions throughout it, right? You started with this Pennsylvania decision, which came down right before the ALJ, for the first time creating these new factors. Going through it, going through a briefing before the ALJ, then we wait and the Secretary puts another decision out in Pennsylvania that changes that test again. And then the ALJ, in this case, gets rid of equitable offset altogether, right? And so by the time Georgia's before the Secretary, it has to fend off that much even more serious position that equitable offset simply isn't permissible at all. But in any event, Georgia has preserved that argument and has raised it thoroughly throughout the briefs below. Second, getting to the arbitrary and capricious argument, the administrative decisions simply don't show that equitable offset is a multi-factor test. Until Pennsylvania, for 25 years, the agency has provided just two factors. Is it a non-federal expenditure? And do the expenditures, the equitable offset expenditures, further the purpose of the original grant? There was never any indication, expressed or otherwise, that the agency was considering some other factor. You get to Pennsylvania and Pennsylvania sets out a brand new seven-factor test that you will not find in any previous decision, citing four decisions that do not say what Pennsylvania says they say, including Arizona, which certainly did not make any mention of other factors or the culpability of the actors in determining whether there was offset. Because as Judge Pryor pointed out, in Arizona, the Department agreed to offset there, despite intentional fraud over a period of four years where those employees in Arizona were simply taking those miscast expenditures for their own gain. A situation where certainly if the Department had wanted to try to impose this new factor, that would be a case where you might do it, and yet they didn't. So this is not a case about new facts showing for the first time that the Department needs to exercise some new power. Do you agree that the standard is arbitrary and capricious? The standard for our second argument is arbitrary and capricious because it's a question whether the agency has departed without explanation from its prior precedent. The first argument is not arbitrary and capricious. It's de novo because it's a statutory argument. I see my time is up, and for those reasons, we'd ask that the court vacate the decision below and remand.